NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0307n.06
Filed: May 4, 2007

No. 05-6246

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| JONATHAN MARK THOMAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: ROGERS, GRIFFIN, Circuit Judges; and RUSSELL, District Judge[*]**

**RUSSELL, District Judge.** Defendant-Appellant Jonathan Mark Thomas appeals his

sentence and conviction for unarmed bank robbery, in violation of 18 U.S.C. § 2113(a), challenging

the district court's decision that: 1) an obstruction of justice enhancement was proper; 2) certain

evidence was admissible; 3) there was sufficient evidence to convict Thomas of unarmed robbery;

and 4) certain expert testimony was admissible.

**BACKGROUND**

On November 4, 2003, Valerie Carter was working behind the teller counter at the

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Chattanooga Area Schools Credit Union in Chattanooga, Tennessee.[1]  At about 10:00 a.m., a man walked up to the counter and told Carter, "Give me all your money, and don't move."  Carter described the person as a black male, approximately six feet tall, of slim build, with an unkempt appearance and distinctive eyes and hair, and testified that he spoke in muffled tones "as if he had cotton in his mouth."  Carter maintained eye contact, telling the man that she would have to move to get the money.  The man instructed Carter to "hurry up."  After Carter opened the money drawer, the man handed her a blue sack into which she placed approximately $487.  The man then snatched the sack and left the credit union.

The credit union had surveillance video cameras.  The camera recorded a black and white image of the man's face as well as his clothing.  The man was wearing a horizontally striped shirt.

Several days after the robbery, Carter was shown a photo lineup.  Carter identified Thomas in one of the photographs as the robber.  Carter also identified Thomas in the courtroom as the man who robbed the credit union on November 4, 2003.

Officer Matthew Hennessee, employed with the Chattanooga Police Department and assigned to the FBI Safe Streets Task Force, responded to the credit union shortly after the robbery.  Officer Hennessee watched the surveillance video and recognized the robber depicted on the videotape to be Thomas, with whom he was familiar.  Officer Hennessee testified that he had previously observed or had contact with Thomas on ten different occasions.

Officer Hennessee advised FBI Special Agent Jim Melia, coordinator for the Safe Streets Task Force, that he had identified Thomas as the person who had robbed the credit union.  On November 5, 2003, Agent Melia participated in the execution of a search warrant at Thomas' residence.  The search uncovered nothing related to the robbery of the credit union.  Agent Melia

[1]The Chattanooga Area Schools Credit Union is a federally insured institution.

testified that this was not surprising, explaining that "most of the bank robbers I have come across dispose of their outer clothing almost immediately, the first chance they get, after a bank robbery happens."

On November 6, 2003, Agent Melia interviewed Thomas at the Chattanooga FBI office. Thomas was read his Miranda warnings and signed a waiver of rights form. Thomas denied having anything to do with the robbery.

During the interview, Thomas was shown a black and white digital photograph taken of the robber from the surveillance video at the credit union. Thomas stated "that it looked just like him but that it wasn't him," and added, "I've got a shirt like that, but it's blue and maroon; it's not green." Pursuant to their investigation, law enforcement knew that the shirt that the robber was wearing had blue and green stripes; however, the photograph that Thomas was shown was in black and white.

Agent Melia questioned Thomas about his whereabouts during the hours preceding the robbery. Thomas offered six different alibis in the course of his interview. The FBI task force followed up on these potential alibis but was unable to corroborate any of them.

After investigating Thomas' alibis, Agent Melia visited him at the jail, advising Thomas that the agents had been unable to confirm any of Thomas' alibis. Thomas stated that this was due to the fact that at the time of the robbery he was at his mother's residence with a woman named Pat Broom. Agent Melia told Thomas that Broom had already been interviewed and had denied that she was with Thomas the morning of the robbery. Thomas responded, "I'll whip her." Thomas indicated that he had sent Broom a letter, had telephoned her, and had enclosed a surveillance photo of the robbery.

After the United States rested its case, Thomas called one witness, his brother Joseph

Thomas. Joseph Thomas indicated that on the day of the robbery he was in Chattanooga on military leave, staying at his mother's home. Joseph Thomas testified that he was with Thomas at their mother's house the morning of the robbery and that Thomas was in his bedroom with Pat Broom around the time the robbery occurred.

On cross-examination, Joseph Thomas conceded that after hearing that Thomas had been charged with the robbery of the credit union, he did not contact any law enforcement authorities to advise them that he could vouch for Thomas' whereabouts around the time that the robbery occurred. The United States produced a copy of Joseph Thomas' military leave form for October 27 through November 6 of 2003, on which he listed his leave address as Arizona.

In rebuttal, the United States called Mickey Milita, the director of guest relations at Erlanger Medical Center. Milita, who was familiar with Thomas, testified that he saw Thomas around 8:30 a.m. on November 4, 2003, at the hospital asking for money. Milita testified that Thomas was wearing a golf shirt that was fairly dirty, bluish-green in color, with horizontal stripes.

On March 29, 2005, the jury returned a verdict of guilty as to the one count charged, unarmed bank robbery in violation of 18 U.S.C. § 2113(a). A presentence investigation report was prepared.

The probation officer calculated Thomas' advisory Guideline range by finding that Thomas had a base offense level of 20 pursuant to U.S.S.G. § 2B3.1, which was increased by two levels because Thomas robbed a financial institution. In the description of the offense conduct, the probation officer stated that "After [Thomas] was arrested, Mr. Thomas called a friend from jail in an effort to get her to tell the FBI agent that he was with her; however she refused." The probation officer also noted in paragraph nine of the report, "During the trial Mr. Thomas' brother, Joseph Thomas, an active duty Air Force member, testified that Jonathan Thomas was with him during the

robbery." In the calculation of the offense level, the probation officer increased Thomas' level by two based on obstruction of justice, stating in support, "See paragraph 9."

Thomas objected to the two-level increase for obstruction of justice based on his brother's testimony. In response, the probation officer stated as follows:

> After the arrest, the defendant attempted to suborn perjury from a friend to establish an alibi during the time of the robbery. Mr. Thomas called her from jail to try and have her testify that they were together during the instant offense. She denied this request. However pursuant to §3C1.1, Application Note 4, if the defendant commits, suborns, or **attempts to suborn perjury** the two-level upward adjustment applies.

The probation officer also stated the enhancement applied based on Thomas' presentation of his brother's false testimony, noting that Joseph Thomas' Air Force leave request form stated he would be spending his leave in another state. The probation officer concluded that the two-level enhancement for obstruction was correctly calculated. The probation officer noted that the government should be prepared to submit evidence at the sentencing hearing on the issue.

At the sentencing hearing on July 29, 2005, the district court took up Thomas' objection to the obstruction of justice enhancement. Thomas' counsel advised the court that Joseph Thomas had told counsel that he was with Thomas on the morning of the robbery at their mother's residence and that counsel accordingly subpoenaed Joseph Thomas to testify. Counsel stated that Thomas did not have any involvement in the presentation of that testimony and did not thereby obstruct or attempt to obstruct justice.

The district court sua sponte turned from the issue of obstruction based on Joseph Thomas' testimony to the information about Thomas' pre-trial telephone call from the jail to a potential witness. The court noted this testimony was not presented at trial. In response, Thomas stated there was no evidence in the record in reference to Thomas' attempt to have Broom testify falsely or testify in relation to an alibi. Thomas objected to the district court's use of this information as a

basis for finding Thomas obstructed justice.

Agent Melia testified during the sentencing hearing that Thomas had told him that he was with Broom on the day of the robbery. Agents had interviewed Broom and she had denied that she was with Thomas on that day. When Agent Melia informed Thomas of Broom's denial, he responded with something to the effect of, "I'll get that bitch." Agent Melia had listened to a tape-recording of a telephone call Thomas placed from the jail to Broom in which he advised Broom to tell the FBI that she was with him on the day of the robbery if the FBI interviewed her. In response, Broom was heard on the tape telling Thomas, "I wasn't with you that day."

Based on this testimony, the district court found that the obstruction of justice enhancement would not be applied as a result of the trial testimony of Thomas' brother, but that it did apply as a result of Thomas' attempt to have Broom testify falsely on his behalf.

The district court found that the total offense level was 24, Thomas' undisputed criminal category was IV, and the Guideline range was 77 to 96 months. The district court stated that the Guideline range was advisory and not binding on the court, that the court nevertheless would consult the Guidelines as well as the sentencing goals set forth in 18 U.S.C. § 3553(a), and would select an appropriate sentence. The parties were invited to address the appropriate sentence in the case. The court sentenced Thomas to 86 months.

## ANALYSIS

### I.      OBSTRUCTION OF JUSTICE ENHANCEMENT

Thomas argues that the district court erred in determining that the obstruction of justice enhancement was proper, as the defense was not forewarned about the use of the evidence relied upon by the court and the evidence itself was not reliable.

After *United States v. Booker*, this Court reviews a defendant's sentence to determine if it

is unreasonable. 543 U.S. 220, 261 (2005).

A district court may enhance a defendant's base offense level by two levels if the "defendant willfully obstructed or impeded or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," by conduct relating to the offense of conviction. U.S.S.G. § 3C1.1 (2004). Obstruction of justice occurs where the defendant threatens, intimidates, or otherwise unlawfully attempts to influence a witness. *Id.*, cmt. n.4.

## A.    Notice

Thomas argues that the district court violated his due process rights by relying on a different theory for the obstruction of justice enhancement than that set forth in the presentence investigation report.

In *United States v. Tiller*, an unpublished opinion, this court held that the district court did not err in enhancing a defendant's sentence for obstruction of justice despite the fact the probation officer did not include the enhancement in the calculation of the offense level in the presentence report. No. 99-3851, 99-3982, 2000 U.S. App. LEXIS 33961 at *15 (6th Cir. 2000). At trial, two former employees of defendant testified that the defendant told them that, if interviewed by the FBI, they should refuse to answer and refer the agents to the defendant or his lawyer or indicate they lacked knowledge of the offense conduct. *Id.* at *10-11. In the presentence report, the probation officer stated "that she believed that the defendant may have attempted to obstruct or impede the administration of justice, but concluded that the trial testimony did not substantiate the obstruction." *Id.* at *10. The district court disagreed and at the sentencing hearing stated that it had "determined that the defendant was guilty of obstruction of justice in counseling others who would be witnesses in the criminal case to tell other than the full truth and not to cooperate." *Id.*

On appeal, the defendant, relying on *Burns v. United States*, 501 U.S. 129 (1991), argued that the district court erred in failing to provide him notice that the court was contemplating an enhancement and therefore the case should be remanded for resentencing. *Id.* at *13. The Court rejected the defendant's argument, finding that while *Burns* held that the district court must give parties reasonable notice before it departs upward from the Sentencing Guidelines on a ground not identified in the presentence report, the issue at hand was not an upward departure from the Sentencing Guidelines, rather it was an application of a sentencing enhancement not recommended by the probation officer in the presentence report. *Id.* In *United States v. Guthrie*, the Court held that the *Burns* notice requirement did not extend to require notice when the district court plans to apply the Guidelines in a manner different from what is recommended in the presentence report. 144 F.3d 1006, 1012 (6th Cir. 1998). Applying this holding, the *Tiller* Court held that the district court did not err in failing to provide the defendant with notice of its intention to apply an enhancement pursuant to U.S.S.G. § 3C1.1. *Tiller*, 2000 U.S. App. LEXIS 33961, at *14. The Court went on to note that the defendant should have been aware that the district court might consider an enhancement based upon obstruction of justice since the probation officer noted in her report that she believed that the defendant attempted to obstruct or impede the administration of justice. *Id.* at *14-15. Although *Tiller* is an unpublished opinion and therefore not binding on our panel, *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007), we agree with its rationale.

Thus, the district court was not required to give Thomas notice prior to applying the sentencing enhancement for obstruction of justice. *See Guthrie*, 144 F.3d at 1012. Furthermore, like the defendant in *Tiller*, Thomas should have been aware that the district court would consider an enhancement for obstruction of justice as the facts relating to Thomas' telephone call to Broom were contained in the presentence report and were also relied upon in the probation officer's addendum

to the presence report.

**B.      Application of the Enhancement**

Thomas argues that the evidence was not reliable enough to support an enhancement as Agent Melia indicated that by the time of the sentencing hearing he could not recall in detail the conversation between Thomas and Broom on the tape-recording.

Thomas objected to the district court's application of the enhancement, a decision that will be reviewed for clear error. *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2002).  The Court has held that testimonial hearsay is admissible at sentencing if it bears some minimum indicia of reliability. *United States v. Katzopoulos*, 437 F.3d 569, 574-75 (6th Cir. 2006).

Although Agent Melia was unable to recall in detail what he heard Thomas and Broom say on the tape-recording, he did recall that Thomas had placed a call from jail to Broom advising her to tell the FBI that she was with him on the day of the robbery if the FBI interviewed her, and that Broom refused to do so.  Additionally, at trial, Agent Melia testified that Thomas told him that he was with Broom the day of the robbery, and when Agent Melia told Thomas that Broom denied being with him, Thomas stated, "I'll whip her."

The district court did not commit clear error in finding that Thomas obstructed justice as there was reliable evidence that Thomas unlawfully attempted to influence Broom.  *See* U.S.S.G. § 3C1.1, cmt. n.4.

**II.      EVIDENTIARY ISSUES**

Thomas argues that three pieces of evidence of other bad acts were erroneously admitted in violation of FED. R. EVID. 404(b).  Thomas did not contemporaneously object to the admission of any of this evidence.  Thomas contends that the district court erred in admitting 1) testimony by Officer Hennessee that he had previously had contact with Thomas on approximately ten different

occasions; 2) photographs taken of Thomas; and 3) Agent Melia's testimony that Thomas threatened to harm Broom when Agent Melia advised Thomas that Broom told agents she was not with Thomas on the morning of the robbery.

Where a party fails to object to the admission of evidence in the district court, this Court will review the district court's decision for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). "[T]he plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992) (internal quotation omitted). A plain error not brought to the district court's attention, may be considered only if it affects the defendant's substantial rights. FED. R. CRIM. P. 52.

FED. R. EVID. 404(b) provides that although evidence of other crimes, wrongs, or acts is not admissible to prove a person's character or propensity to engage in criminal conduct, it may be admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This Court has established a three-step process for determining the admissibility of evidence under FED. R. EVID. 404(b) when an objection is made. First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred; second, the district court must decide whether the evidence is probative of a material issue other than character; third, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.[2] *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

---

[2]Additionally, if requested the district court must "clearly, simply, and correctly instruct the jury as to the specific purpose for which it may consider the evidence." *United States v. Fraser*, 448 F.3d 833, 839 (6th Cir. 2006). Neither party made such a request in the case at hand.

## A. Officer Hennesse's Prior Contacts with Thomas

Officer Hennessee testified that after viewing the credit union surveillance video he recognized the robber depicted on the videotape to be Thomas. Officer Hennessee testified that he had ten encounters with Thomas between August and November of 2003. Thomas argues that the district court erred in admitting this testimony because it allowed the jury to infer that Thomas was someone who was in frequent trouble with the law. The government argues that this testimony is not evidence of prior bad acts, rather it is admissible background evidence.

Background or *res gestae* evidence consists of "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Such evidence does not implicate FED. R. EVID. 404(b). *Id*. "Proper background evidence has a causal, temporal or spatial connection with the charged offense." *Id.* "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

Here, the challenged testimony explained how Officer Hennessee recognized Thomas when he saw the surveillance video. Officer Hennessee did not state that his familiarity with Thomas arose from criminal activity, only that he had observed Thomas several times and was familiar enough with Thomas to identify him on the surveillance tape. This testimony was necessary to explain why law enforcement focused their investigation on Thomas. Such testimony was proper background evidence, completing the story of the charged offense, and, therefore, does not implicate FED. R. EVID. 404(b). *See Hardy*, 228 F.3d at 748.

## B. Photographs

During Officer Hennessee's testimony, the district court admitted ten photographs of Thomas ranging over a span of seven years. Thomas argues that these photographs were impermissible arrest photos, presumably taken from Officer Hennessee's encounters with Thomas, and were inadmissible under FED. R. EVID. 404(b) as evidence of other bad acts. The government argues that the district court did not plainly err in admitting these photographs as they were highly probative for the purpose of determining whether Thomas was the person depicted in the surveillance video.[3]

These photographs were probative of the robber's identity, a central issue of fact for the jury to determine. The jury was never told under what circumstances the photographs were taken. Where photographs of a defendant are admitted for a permissible purpose and do not reveal that they were taken in connection with the defendant's prior arrest, the mere fact that they were mug shots does not undermine the propriety of their admission. *See United States v. George*, 160 Fed. Appx. 450, 454 (6th Cir. 2005) (finding no error where district court admitted mug shot in photo array on issue of identity where photograph did not suggest that defendant had previously been in jail); *see also United States v. Cannon*, 903 F.2d 849, 855-56 (1st Cir. 1990) (finding photographic array including picture of defendant admissible on issue of identity where jury would not presume picture was mug shot or defendant had prior criminal record). As the photographs of Thomas did not indicate that they were mug shots or that Thomas had previously been in jail, their probative value was not substantially outweighed by their prejudicial effect. *See id.* Therefore, the district court's admission of this evidence was not plain error affecting Thomas' substantial rights.

## C.    Thomas' Statement About Broom

At trial, Agent Melia testified that when he told Thomas that Broom denied being with him, Thomas responded, "I'll whip her." Thomas argues that this testimony was inadmissible under FED.

---

[3]The photographs, which bear no law enforcement markings, depict a head and shoulders likeness of Thomas wearing civilian clothing.

R. EVID. 404(b) as there was no other reason to put the comment before the jury other than to portray Thomas in a bad light and as an abuser of women. The government argues that this is background evidence that is probative of the charged offense.

Here, Agent Melia's testimony was probative of Thomas' guilt as it was inconsistent with Joseph Thomas' testimony that Thomas was with Broom at the time of the robbery. Nor did the prejudicial effect of the testimony outweigh its probative value. No evidence was submitted as to any violence between Thomas and Broom, nor was there any evidence presented at trial that Thomas was an abuser of women. Therefore, the district court's admission of this evidence was not plain error affecting Thomas' substantial rights.

## III.    SUFFICIENT EVIDENCE

Thomas argues that his conviction should be reversed for lack of sufficient evidence as there was no evidence presented to show that Thomas used the threat of force or otherwise intimidated anyone at the credit union.

"When a conviction is attacked for insufficiency of the evidence, the evidence is viewed in the light most favorable to the prosecution to determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt." *United States v. Barnett*, 398 F.3d 516, 521-22 (6th Cir. 2005). This Court will reverse a judgment for insufficiency of the evidence "only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* at 522 (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

"To sustain a conviction under 18 U.S.C. § 2113(a), the jury was required to find that [Thomas] intentionally took money from another person, that the money was then in possession of a federally insured bank or credit union, and that [Thomas] took the money by force, violence, or intimidation." *United States v. Sullivan*, 431 F.3d 976, 982 (6th Cir. 2005). In the context of section

2113(a), intimidation is defined as "an act by a defendant reasonably calculated to put another in fear, or conduct and words calculated to create the impression that any resistance or defiance by the individual would be met by force." *United States v. Waldon*, 206 F.3d 597, 606 (6th Cir. 2000) (quotations omitted). "Whether intimidation under 18 U.S.C. § 2113(a) exists in a particular case is determined by an objective test: whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002).

In *United States v. Gilmore*, there was no evidence that the defendant carried a firearm in any of the bank robberies for which he was convicted. *Id.* In upholding defendant's conviction against a sufficiency of the evidence challenge, the court stated that "the display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon is not a necessary ingredient of intimidation under § 2113(a)." *Id.* The court found that written or verbal "[d]emands for money presented to a teller amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *Id.*

In the present case, Thomas approached the counter where Carter was working as a teller and told her, "Give me all your money, and don't move." After instructing Carter to "hurry up," Thomas shoved a blue sack at her in which to place the money. At trial, Carter testified that she was afraid that she was "going to be either shot or hurt." Taking the evidence in the light most favorable to the government, the proof of intimidation was sufficient to convict Thomas of bank robbery under 18 U.S.C. § 2113(a) beyond a reasonable doubt. *See United States v. Robinson*, 527 F.2d 1170, 1172 (6th Cir. 1975) ("An 'ordinary person' in the teller's position could reasonably, we think, infer an implicit threat in the demand, 'Give me all your money,' accompanied by the presentation of a 'black pouch'."); *Gilmore*, 282 F.3d at 403 ("Evidence that the teller felt threatened is probative of

whether a reasonable person would have been afraid under the same circumstances.").

## IV.     EXPERT TESTIMONY

Thomas argues that the district court erred by allowing Agent Melia to testify that he was not surprised by the lack of evidence found in Thomas' residence during the execution of the search warrant, "[b]ecause most of the bank robbers I have come across dispose of their outer clothing almost immediately, the first chance they get, after a bank robbery happens." Thomas argues that this was expert testimony for which the government provided no basis and, therefore, the district court erred in allowing its admission. Thomas did not raise this issue in the district court; therefore, this Court will review the district court's decision for plain error.

Pursuant to FED. R. EVID. 702, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." If a witness is not testifying as an expert, that witness' testimony in the form of opinions or inferences is limited to those which are "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. As Agent Melia's testimony that he was not surprised by the lack of evidence found in Thomas' residence during the search was based on specialized knowledge, his testimony would be admissible only if he were qualified as an expert pursuant to FED. R. EVID. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that evidence proffered by an expert must be relevant to the task at hand and must have a reliable foundation. 509

U.S. 579, 597 (1993). The Supreme Court subsequently held in *Kumho Tire Co. v. Carmichael* that *Daubert*'s principles apply to all expert testimony admissible under FED. R. EVID. 702. 526 U.S. 137, 148 (1999). "In essence, *Daubert* and its progeny have placed the district courts in the role of 'gatekeeper,' charging them with evaluating the relevance and reliability of proffered expert testimony with heightened care." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007). "Although the trial court is not required to hold an actual hearing to comply with *Daubert*, the court is required to make an initial assessment of the relevance and reliability of the expert testimony." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999). Here, the district court failed to perform its gatekeeping function with regard to the challenged testimony, making no initial assessment of the relevance and reliability of Agent Melia's testimony concerning the activity of bank robbers. It is to be noted that there was no objection to the expert opinion.

Although the district court may have erred in admitting this evidence without performing its gatekeeping function under *Daubert* and progeny, Thomas has not shown how this alleged error affected his substantial rights. Thomas effectively cross-examined Agent Melia on the issue, impeaching Agent Melia with the apparent inconsistency between his experience and that of the affiant on the search warrant, also an experienced FBI agent.[4]

Thomas was identified both in court and through a photo lineup by the teller as the man who robbed the credit union. Officer Hennessee also identified Thomas, with whom he was familiar, after watching a surveillance tape of the robbery. When questioned by law enforcement officials and shown a black and white digital photograph taken of the robber from the surveillance video, Thomas stated, "I've got a shirt like that, but it's blue and maroon; it's not green." The shirt that

---

[4]The affiant on the search warrant stated, "It has been my experience, as well as the collective experience of other agents of the Chattanooga, Tennessee, resident agency of FBI, that bank robbers frequently conceal proceeds, instrumentalities, and contraband from their robberies in and around their residence following the robberies."

the robber had been wearing had blue and green stripes. There was also testimony by Milita that he observed Thomas on the morning of the robbery wearing a bluish-green shirt with horizontal stripes. This evidence was sufficient by itself to allow a rational trier of fact to find beyond a reasonable doubt that Thomas was the man who committed the robbery. *See Barnett*, 398 F.3d at 521-22. Therefore, the district court did not commit plain error affecting Thomas' substantial rights in admitting the challenged testimony of Agent Melia.

## CONCLUSION

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in determining that an obstruction of justice sentencing enhancement was proper, in its rulings on the challenged evidentiary issues, or in finding there was sufficient evidence to convict Thomas of unarmed bank robbery. Although the district court may have erred in admitting the challenged testimony of Agent Melia without performing its gatekeeping function, we find that this error did not affect Thomas' substantial rights. Accordingly we **AFFIRM** the judgment of the district court.