NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0503n.06
Filed: August 18, 2008

No. 07-5709

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| MICHAEL WAYNE HEMBREE, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

**BEFORE: BATCHELDER and GILMAN, Circuit Judges; and ZOUHARY, District Judge.***

**RONALD LEE GILMAN, Circuit Judge.** Michael Wayne Hembree was convicted by a jury on one count of armed bank robbery and on one count of knowingly possessing a firearm in furtherance of a crime of violence. Over Hembree's objection, the district court admitted evidence that the vehicle Hembree drove during the bank robbery was previously stolen and had a stolen license plate. The court instructed the jury that the evidence was admissible for the purpose of showing preparation, plan, opportunity, identity, *modus operandi,* and *res gestae,* and determined that the evidence was more probative than prejudicial.

---

* The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Although the disputed evidence was properly admitted for the purpose of showing preparation, plan, opportunity, and *res gestae,* the district court erred in stating that the evidence was also admissible for the purposes of showing identity and *modus operandi*. But even if the disputed evidence was improperly admitted, any error was harmless because the record contains overwhelming evidence of Hembree's guilt. We therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On December 3, 2003 a white male wearing jeans and a jean jacket entered the Bank of Overton County located in Livingston, Tennessee. Brandishing a gun, he approached teller Beth Carr and told her that he wanted the cash in the bank's vault. The robber ordered Carr, four other bank employees, and one customer behind the bank teller's counter. He then instructed the employees to fill a pillowcase with money from the bank vault. Some of the money provided to the robber was "bait" money that had previously been photocopied and recorded by the bank. While the employees were putting the money into the pillowcase, the robber repeatedly asked how much money the vault contained. Before leaving, he locked the customer and all of the employees, with the exception of Diane Franklin, inside the bank's vault. The robber then forced Franklin to accompany him to the elevator and then pushed her into the elevator before fleeing. Franklin rode the elevator to the second floor, exited, and looked out a window into the bank's parking lot. She saw a white Chevrolet Caprice leaving the parking lot and heading south toward Cookeville, Tennessee.

After bank employees called the police, Franklin provided the responding officers with a description of both the robber and the car that she saw leaving the bank parking lot. A be-on-the-lookout (BOLO) dispatch with regard to the robbery was issued by the Putnam County Sheriff's Department. The dispatch told officers to look for an old model white Chevrolet Caprice being driven by an older white male and believed to be traveling southbound on Route 11.

Sheriff's Deputy Sam Lee was on patrol with Deputy Bill Harris on the day of the robbery. The two deputies were traveling on Route 11 when they spotted a vehicle and driver matching the description from the BOLO. After the deputies got behind the vehicle in order to see the license plate, Deputy Lee provided the tag number to dispatch. He was informed that the license plate had been stolen. Deputy Lee then activated the squad car's emergency lights, but the suspect did not pull over. Instead, the suspect sped away in an attempt to escape.

The white Chevrolet eventually swerved and veered into a field. When the deputies arrived at the spot in the field where the Chevrolet had come to rest, the driver, an older white male wearing jeans, was attempting to climb out of the passenger-side window. The deputies placed the suspect in handcuffs and eventually ascertained that he was Hembree. An inventory of the vehicle revealed a loaded handgun, a blue jean jacket, and a pillowcase filled with money.

The FBI assigned Violent Crimes Task Force Officer Eddie Farris to investigate the bank robbery. During an interview, Hembree admitted to the robbery and told Farris that he had planned to rob a bank because his girlfriend had been kidnaped and was being held against her will by two individuals demanding $50,000 for her release. He also told Farris that he had traveled to Tennessee for the purpose of robbing a bank and had identified two banks as potential targets. Hembree admitted

that, in preparation for the robbery, he went to a Wal-Mart in Cookeville and purchased a blue jean jacket, .38 caliber ammunition for his firearm, and a pillowcase in which he planned to carry the stolen money. He also admitted that he had used a gun during the robbery and that he had stolen the white Chevrolet Caprice approximately three to four months earlier. Farris investigated Hembree's allegation that his girlfriend had been kidnaped, but found no evidence to support the story.

Although Hembree did not testify at trial, his attorney asserted the affirmative defense of necessity, arguing that the robbery was justified because Hembree stole the money only to secure the release of his allegedly kidnaped girlfriend. Hembree, however, presented no corroborating evidence to support his allegation of kidnaping. His attorney's sole argument on this issue was that Hembree's inquiry during the robbery about the amount of money in the vault supported his claim that he needed $50,000 to save his girlfriend from her kidnappers.

Four witnesses to the bank robbery positively identified Hembree at trial as the individual who robbed the bank. The deputies who arrested Hembree, moreover, provided testimony that he was apprehended wearing clothes matching those described as being worn by the robber and driving a car that fit the description of the one used by the robber. In addition, law enforcement officers and the director of security for the bank testified that money from the bank robbery—including the bait money that had been identified as belonging to the Overton County Bank—was found in Hembree's car at the time of his arrest. Finally, FBI Agent Farris testified regarding Hembree's admission that he had robbed the bank with a firearm.

Hembree was indicted in December of 2003 and charged with committing an armed bank robbery, in violation of 18 U.S.C. § 213(a) and (d), and knowingly possessing a firearm in

furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). In June of 2005, Hembree filed three motions in limine, seeking to prevent the government from introducing the following evidence: (1) that the car used in the charged robbery was previously stolen, (2) that Hembree had a record of four prior armed robberies and related firearm offenses from the Central District of Illinois, and (3) that federal charges were then pending against him related to the armed robbery of a post office, assault of a government employee, and a related firearms offense. Only the motion addressing the admission of evidence related to the stolen car used in the robbery was contested by the government. The district court made a preliminary ruling that it would grant Hembree's two motions relating to the past robberies, but would reserve its final ruling on the motion regarding the stolen vehicle until evidence was presented at trial.

At trial, the district court held a conference outside the hearing of the jury to address the admission of testimony relating to the stolen vehicle and license plate. The court ruled that the evidence was admissible for the purpose of proving preparation, plan, opportunity, and identity. It also concluded that the evidence could be used to show *modus operandi* and was relevant as part of the *res gestae* of the crime because it shed light on the circumstances leading to Hembree's identification and arrest for the charged offenses.

After testimony related to the stolen vehicle was presented, the district court gave the jury a limiting instruction regarding the disputed evidence. The jurors were told that they could not consider the testimony to prove bad character or to prove that Hembree acted in conformity with that bad character. They were informed, however, that they could consider the evidence for the limited purpose of showing preparation, plan, opportunity, identity, *modus operandi,* and *res gestae*, without

5

any one purpose being singled out in particular. The jury instructions included similar language outlining the limited purposes for which the jury could use the other-act evidence.

Hembree was found guilty on both counts of the indictment. He was later sentenced to serve consecutive terms of 121 months of imprisonment for the armed bank robbery and 300 months of imprisonment for use of the firearm. This timely appeal followed.

## II. ANALYSIS

### A. Rules 403 and 404(b) of the Federal Rules of Evidence

Rule 404(b) provides in pertinent part that

> [e]vidence of other crimes, wrongs, or acts is not permissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Evidence that is admissible for a proper purpose under Rule 404(b), however, must also meet the requirements of Rule 403 of the Federal Rules of Evidence, which cautions that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

We generally review the admission of evidence under the abuse-of-discretion standard. *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006). Rule 404(b) evidence, however, is analyzed using the following three-part test: (1) the "determination that the 'other act' took place" is reviewed under the clearly erroneous standard, (2) the "legal determination that the evidence was admissible for a proper purpose" is reviewed under the de novo standard, and (3) the "determination

that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect" is reviewed under the abuse-of-discretion standard. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008) (explaining that although some caselaw suggests that the abuse-of-discretion standard rather than the de novo standard should be applied at step two of the analysis, "[t]hese standards are not in fact inconsistent, because it is abuse of discretion to make errors of law or clear errors of factual determinations") (citation omitted).

Under the abuse-of-discretion standard, we "will leave rulings about admissibility of evidence undisturbed unless we are left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (alterations omitted). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (citation omitted).

In the present case, Hembree argues that evidence that the car and the license plate were stolen was improperly admitted. He does not deny that the prior acts of stealing the car and the licence plate occurred. Rather, he argues on appeal that because the only defense he offered was one of necessity, none of the factors identified by the court were at issue in the case (i.e., preparation, plan, opportunity, identity, *modus operandi*, and *res gestae*) and that the evidence was therefore improperly admitted. Alternatively, he argues that, even if one or more of the factors was at issue, the evidence was not sufficiently probative to outweigh its prejudicial effect under Rule 403. He specifically contends that the evidence was prejudicial to him because testimony that he had previously stolen the vehicle and

7

the license plate caused the jury to reject his defense of justification upon learning that he was a "demonstrated thief."

The government responds by noting that because Hembree pled not guilty, every element of the charged crime was contested by the defendant, and that the evidence in dispute was therefore properly admitted for all of the Rule 404(b) purposes identified by the court. It also argues that even if the contested evidence was improperly admitted, any error was harmless because there was overwhelming evidence establishing Hembree's guilt.

A review of the record suggests that proof regarding the stolen nature of the vehicle used during the bank robbery was admissible for the purpose of proving preparation, plan, and opportunity. *See United States v. Ford*, 72 F. App'x 342, 347 (6th Cir. 2003) (approving the district court's admission of evidence that a stolen vehicle was found at the defendant's house because the evidence showed that he had "the 'opportunity' to commit a bank robbery as he had access to a stolen car to use as a getaway vehicle"); *United States v. Nolan,* 910 F.2d 1553, 1562 (7th Cir. 1990) (concluding that the use of a stolen vehicle during a bank robbery was relevant to show the defendant's plan to commit the offense because a jury could reasonably infer that a stolen vehicle was used for the purpose of avoiding identification).

The disputed evidence was also admissible as part of the *res gestae* of the crime in light of the fact that the deputies who arrested Hembree pulled him over only after giving his licence-plate number to dispatch and learning that the plate had been reported stolen. *See United States v. Thomas* 223 F. App'x 447, 454-55 (6th Cir. 2007) (affirming the admission of an agent's testimony that he had ten encounters with the defendant within a four-month period prior to the instant offense of bank

robbery because the evidence was background, or *res gestae*, and helped to explain why the agent focused his attention on the defendant and how the agent recognized the defendant when he saw a video of the crime).

On the other hand, the evidence was not properly admitted for the purpose of proving identity or *modus operandi*. Although Hembree placed his identity at issue when his attorney questioned the accuracy of various witnesses' descriptions of the robber and implied on cross-examination that Hembree was not the person involved in the robbery, the district court failed to adequately explain why evidence that Hembree was driving a stolen vehicle helped to establish his identity or that he had a signature method of committing bank robberies. The district court, therefore, overstated the grounds upon which the evidence was properly admitted. As discussed below, however, there was overwhelming evidence establishing that Hembree was guilty of the bank robbery at issue here.

**B.      Harmless error**

Even if the district court erred in admitting the Rule 404(b) evidence, a remand for a new trial is unnecessary if the error was harmless. *See United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1998) ("An error in the admission of evidence does not require granting a criminal defendant a new trial unless the error affects 'substantial rights.'" (quoting Fed. R. Crim. P. 52(a))). In determining whether a remand is appropriate, we must "consider the impact of the error upon the right of the defendant to a fair trial," *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999), and take "account of what the error meant to [the jury] . . . in relation to all else that happened" at trial. *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001) (citation omitted) (first alteration in original).

A remand is not necessary if we conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error." *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). "Whether the jury was 'substantially swayed' by the improper admission of evidence of other acts in a criminal trial generally depends on whether the properly admissible evidence of the defendant's guilt was overwhelming." *Id.* "When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error." *Layne*, 192 F.3d at 573.

Hembree was not only identified by four eyewitnesses at the bank, but was apprehended by law enforcement officers in the same car that was seen leaving the scene of the robbery. The gun used in the robbery and all of the money stolen from the bank, including the bait money, were found in Hembree's car. Hembree also confessed to the crimes and to the preparation leading to their commission. Evidence of Hembree's guilt was therefore "overwhelming." *See Haywood*, 280 F.3d at 724. Any prejudice created by the Rule 404(b) evidence was also reduced by the limiting instructions provided to the jury by the district court.

Moreover, because the necessity defense is limited to "rare situations and should be 'construed very narrowly'" we have grave doubt that the defense even applies to Hembree. *See United States v. Ridner*, 512 F.3d 846, 850-51 (6th Cir. 2008) (refusing to allow the necessity defense where a defendant charged with being a felon in possession of ammunition took the ammunition away from his brother after his brother had allegedly threatened to commit suicide). The defense of necessity allows a defendant to escape responsibility despite proof that his actions encompassed all of the

elements of a criminal offense. It is limited, however, to situations where the defendant or a third party "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," and where the defendant had no reasonable, legal alternative to violating the law. *United States v. Newcomb*, 6 F.3d 1129, 1134-35 (6th Cir. 1993) (allowing the defense where a defendant charged with being a felon in possession of a firearm had possession of a gun only because he wrestled the gun away from another individual who was attempting to kill a third party) (citation and internal quotation marks omitted).

Hembree's counsel presented no evidence other than the statements that Hembree made during the robbery to establish that the kidnaping allegations were true. Hembree also failed to present any evidence suggesting that he had no legal alterative to robbing the bank. We therefore conclude that even if the Rule 404(b) evidence had been excluded, Hembree's necessity defense was so weak that the jury would still have found that Hembree's actions were not justified.

Because there is overwhelming evidence establishing that Hembree was guilty of the bank robbery at issue here, we believe that, even if the district court erred in not properly instructing the jury regarding the permissible uses of the contested evidence, any such error was harmless. We therefore find no basis to set aside Hembree's conviction.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.