RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 09-5568

GARY CLAY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 07-00147-001—Harry S. Mattice, Jr., District Judge.

Argued: July 21, 2011

Decided and Filed: January 10, 2012

Before: MOORE and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christopher P. Keleher, QUERREY & HARROW, LTD., Chicago, Illinois,
for Appellant. Scott A. Winne, ASSISTANT UNITED STATES ATTORNEY,
Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Christopher P. Keleher,
QUERREY & HARROW, LTD., Chicago, Illinois, M. Keith Davis, AUSTIN, DAVIS
& MITCHELL, Dunlap, Tennessee, for Appellant. Zachary C. Bolitho, ASSISTANT
UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

MARBLEY, D. J., delivered the opinion of the court, in which MOORE, J.,
joined. KETHLEDGE, J. (pp. 21–25), delivered a separate dissenting opinion.

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of
Ohio, sitting by designation.

1

––––––––––––––––

**OPINION**

––––––––––––––––

ALGENON L. MARBLEY, District Judge.  Defendant-Appellant Gary Clay appeals his convictions of carjacking and brandishing a firearm, contending that the district court erred in admitting evidence of prior bad acts, in denying his Rule 29 motion for acquittal, and in denying his motion for a downward variance at sentencing.  Because the district court erred in admitting evidence of prior bad acts and the errors were not harmless, we **REVERSE** Clay's convictions and **REMAND** for a new trial.

## I. BACKGROUND

In 2007, Kathryn White worked for the Internal Revenue Service in Chattanooga, Tennessee.  When she arrived at work the morning of November 1, an African American male approached her as she exited her white 2003 Pontiac Grand Prix.  The man pointed a silver semi-automatic handgun at her and ordered her out of the car.  A co-worker, Ramona Means, pulled into the parking lot a few minutes later.  When the man saw Means, he turned and pointed the gun at her car.  He looked back and forth between White and Means, and threatened to "put a cap in [Means]" if White did not start her car.  White complied, and the man drove away in the Grand Prix.

The FBI assigned Officer Matthew Hennessee to the case.  He soon learned that about an hour after the car was stolen someone attempted to use White's stolen Bank of America and Conoco Phillips card at a First Tennessee Bank ATM.  The Bank's surveillance video showed that a unshaven, African American man wearing a red and white patterned shirt and a hooded jacket had attempted to use the cards.  Officer Hennessee obtained still photos from the ATM video, compared them to Gary Clay's driver's license photo, and determined that they were the same person.

After days of searching, officers located the Grand Prix in the parking lot of the East Lake Courts housing complex.  They conducted surveillance on the vehicle and determined the apartment with which the car was associated.  They went to that

apartment and were met by two women, Miranda Abernathy and Valerie Hancock. Clay was in the apartment and arrested without incident.

Hancock, the lessee, consented to a search of the apartment. Officers located several items, including the keys to the Grand Prix and items reported stolen in a recent robbery. Inside the Grand Prix, officers found a compact disc containing pictures of Clay with friends and family. In several of the pictures, he was wearing a red and white patterned shirt.

Officer Hennessee traced the items reported stolen to a robbery of two vehicles in a Cricket Communications parking lot. The first vehicle belonged to Steve Moser. A handgun, handgun case, and Motorola cell phone were missing from his truck after the break-in. While police found the case in bushes near the lot, they never recovered the gun. The second vehicle belonged to Ronald Archey. A checkbook and portable DVD player were missing from his car. The police located these two items in the apartment where they found Clay. A surveillance video from the lot showed an African American man wearing a red and white patterned shirt breaking into the cars and walking away with the handgun case. The red and white shirt was similar to the shirt on the compact disc found in the Grand Prix and the shirt worn in the video from the First Tennessee Bank.

A grand jury charged Clay with carjacking in violation of 18 U.S.C. § 2119 and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The case proceeded to trial, and the district court made two pre-trial evidentiary rulings that are at issue in this appeal. First, Clay sought to exclude evidence of an assault he had committed against Karissa Marshall in 2006. The district court admitted Marshall's testimony under Rule 404(b) to show Clay's specific intent, but prevented the government from informing the jury that Clay had been convicted of assaulting Marshall. The court also agreed to provide a limiting instruction before

Marshall's testimony.**1** Second, Clay sought to exclude any evidence relating to the theft of Moser's handgun from his truck. The district court admitted evidence of the uncharged theft under both the *res gestae* doctrine and 404(b), and issued a limiting instruction prior to the evidence's introduction.**2**

At trial, Officer Hennessee testified about his investigation. Abernathy, who lived in the apartment, testified that she saw Clay with a semi-automatic handgun during the general time period of the offense. She also testified that she saw Clay driving a Pontiac Grand Prix during this same time period, and when shown a picture of White's car, stated, "[t]hat's the car he drove." Means, a parking lot witness, could not positively identify the suspect. White died in a car accident before the trial. There is no indication in the record that she made any prior identifications. At the close of the government's case, Clay made a Rule 29 motion. The district court denied the motion.

Clay did not testify, but he presented four witnesses. Gail Evans, an IRS employee who was also in the parking lot that morning, testified that she had previously described the carjacker as 5'8," clean shaven, and of medium complexion. A day after the carjacking, she reviewed a photographic lineup, which included Clay. She identified an individual that she was 50% sure was the person she saw during the carjacking. It was not Clay. Evans also testified that a week before trial, she was shown a photograph of two men standing next to each other: Clay and his friend Adarius Smith. She identified Smith, who is 5'8," as the carjacker.

The evidence established that Clay was between 6'1" and 6'2." Clay's brother, Gregory Clay, testified that Clay is right-handed, has two tattoos, and always wears a mustache. On cross-examination, he was shown letters that Clay had written from jail

---

**1**The district court instructed the jury that Marshall's testimony was "to shed light, if you believe her testimony sheds any light, on whether [the defendant] had the requisite intent to cause death or serious bodily harm in connection with the November 1, 2007 incident, not the incident that Ms. Marshall is going to testify about."

**2**The district court instructed the jury that the video was admitted for the limited purpose of showing how Clay might have obtained the handgun, as well as to show preparation and identity. The court further explained that Clay was not on trial for stealing the handgun or anything else from the truck, but only for the carjacking, and so the jury was not to consider the evidence for propensity, but only to consider it for the limited purposes described.

to Jessica Starkey, the mother of his child.  In the letters, Clay asked Ms. Starkey to construct an alibi for him and to blame the carjacking on Adarius Smith.

The jury found Clay guilty on both counts.  The court sentenced him to 360 months of imprisonment.

## II. LAW AND ANALYSIS

### A. Standard of Review

A district court determines the admissibility of evidence under Rule 404(b) pursuant to a three-step process.

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred.  *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character.  *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (citing *United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir. 2002)).

We typically review a district court's evidentiary rulings for an abuse of discretion.  *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006).  Because the district court uses a multi-step analysis in determining whether to admit Rule 404(b) evidence, however, we also utilize a three-step process in reviewing these determinations.  First, we review for clear error the factual determination that other acts occurred.  Second, we review de novo the legal determination that the acts were admissible for a permissible 404(b) purpose.  Third, we review for abuse of discretion the determination that the probative value of the evidence is not substantially outweighed by unfair prejudicial impact.  *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000).

Finally, this Court reviews de novo a district court's denial of a Rule 29 motion for judgment of acquittal based on the insufficiency of the evidence.  *United States v.*

*Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002). The Court must construe the evidence in the light most favorable to the government, and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Hofstatter*, 8 F.3d 316, 324 (6th Cir. 1993), *cert. denied*, 510 U.S. 1131 (1994). A defendant "bears a very heavy burden" in a sufficiency of the evidence challenge. *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (internal citations omitted).

## B. Other Act: Assault

Federal Rule of Evidence 404(b) allows the government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *Hardy*, 228 F.3d at 750. The Rule contains a non-exhaustive list of possible purposes: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." *Id.*

Clay argues that the district court erred in admitting the evidence of the September 2006 assault of Karissa Marshall pursuant to Rule 404(b). At trial, Marshall testified that when she was 15, a car driven by Clay pulled alongside her as she was walking to a bus stop and asked her if she wanted a ride. When she resisted, the driver got out of the car, grabbed her, and hit her in the face with a gun. The blow knocked her unconscious, and she told the jury, "I thought I was going to die that day."

### 1. Sufficient Evidence That Other Acts Occurred

First, we must review for clear error the district court's determination that there is "sufficient evidence to support a finding by the jury that the defendant committed" the assault. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The assault of Marshall is undisputed, so no discussion is needed as to step one.

## 2. Permissible 404(b) Purpose

Second, we review de novo whether the evidence was admitted for a proper 404(b) purpose.  It is well-established that this determination is a question of law.  *See United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007), *cert. denied*, 129 S. Ct. 37 (2008).  This Circuit has taken the position that "in reviewing a trial court's evidentiary determinations, this court reviews de novo the court's conclusions of law."  *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005).  The court in *McDaniel* confirmed that "this standard is consistent with the Supreme Court's admonition in *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) that we review evidentiary decisions for an abuse of discretion, because it is an abuse of discretion to make errors of law or clear errors of factual determination."  *Id.*

Indeed, this Circuit has been consistent in adopting *McDaniel*'s interpretation of *Joiner*.  *See, e.g.*, *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011) (reviewing the district court's legal determinations de novo and its factual decisions for clear error, holding "that these two standards of review are not in conflict as 'it is an abuse of discretion to make errors of law or clear errors of factual determination' in evidentiary rulings") (citing *McDaniel*); *United States v. Martinez*, 588 F.3d 301, 309 (6th Cir. 2009) (following *McDaniel*'s approach in "reviewing de novo the court's conclusions of law," reasoning that "[t]o the extent the district court's admission of the Boswell video constitutes an error of law, such error is an abuse of discretion"); *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006) (adopting *McDaniel*'s interpretation of *Joiner* by "point[ing] out that these two standards of review are not in fact inconsistent because 'it is an abuse of discretion to make errors of law or clear errors of factual determination.'") (citations omitted).

The dissent urges us instead to apply an abuse of discretion standard in deference to the district court.  The dissent grounds its position in a reading of *Joiner* that has not been adopted in this Circuit and is in derogation of *McDaniel* and its progeny.  The dissent then bootstraps this insular reading of *Joiner*, relying on *United States v. Jenkins*, which cites *Joiner*'s holding that "all evidentiary rulings are subject to abuse-of-

discretion review" but does not discuss its standard of review of the trial court's legal determination of the proper 404(b) purpose, 593 F.3d 480, 484 (6th Cir. 2010), and *Trepel v. Roadway Exp. Inc.*, which held that after *Joiner*, hearsay evidentiary rulings must be reviewed for an abuse of discretion.  194 F.3d 708 (6th Cir. 1999).  The dissent's cases, however, are not apposite to the *McDaniel* line of cases.  First, *Jackson* simply recites *Joiner*'s general abuse of discretion standard for evidentiary determinations, which *McDaniel* follows and so do we.  Secondly, *McDaniel* simply took over where *Trepel* left off by clarifying that the abuse of discretion review of evidentiary determinations which *Joiner* commands is not inconsistent with the court's abiding duty to review questions of law de novo.  *McDaniel*, 398 F.3d at 544, *supra*. The dissent wishes to create a split in our precedent where one need not exist.  It is unnecessary to address the remainder of the dissent's arguments as they are predicated on the heightened deference it grants to the district court's evidentiary decisions under the erroneous standard of review.  This Court, accordingly, reviews the district court's determination of a proper 404(b) purpose de novo.

The federal carjacking statute, 18 U.S.C. § 2119, requires the government to prove that a defendant had the specific intent to cause serious bodily harm or death when he or she took the victim's car.  *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).  In other words, the government must "prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car."  *Id.* at 477 (quoting *Holloway v. United States*, 526 U.S. 1, 11–12 (1999)).  In order to satisfy this requirement, the government sought to use the assault of Marshall to show that Clay had the specific intent to cause serious bodily harm or death to White.

As a threshold matter, we have approved of the admission of other acts evidence to show specific intent in certain circumstances.  *See United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995) (holding that "where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove

that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)"). Most frequently, we admit this evidence in cases involving drug offenses such as possession with intent to distribute or conspiracy to distribute, or when the charged offenses are identical. *See, e.g., United States v. Love*, 254 F. App'x 511, 515–20 (6th Cir. 2007) (defendant's prior drug convictions admissible to show intent to participate in a conspiracy where defendant had pleaded not guilty to engaging in a conspiracy to distribute cocaine); *United States v. Conteh*, 234 F. App'x 374, 384–85 (6th Cir. 2007) (finding no error in the admission of testimony about defendant's Colorado bank fraud scheme in a prosecution for Ohio bank fraud scheme); *Johnson*, 27 F.3d at 1192–93 (finding no error in the admission of other acts of possession with intent to distribute in a prosecution for the same offense); *United States v. Pierce*, 16 F.3d 1223 (Table), 1993 WL 513950, at *3 (6th Cir. 1993) (finding no error in the admission of evidence to show intent of past sexual abuse in prosecution of attempt to commit sexual abuse when victim was the same); *United States v. Crachy*, 800 F.2d 83, 87 (6th Cir. 1986) (finding no error in the admission of evidence of conversations about prior acts relating to counterfeit bills in prosecution of possession of counterfeit money and delivery of counterfeit money).

We have yet to consider, however, whether prior bad acts are admissible to show specific intent to cause serious bodily harm or death in a carjacking case. Other circuits have found that prior acts may be admissible to show specific intent to cause serious bodily harm or death in a carjacking case in narrow circumstances, such as when the prior acts occur nearly simultaneously with the charged offense or when they involve the same victim. *See United States v. Rodriguez-Berrios*, 573 F.3d 55, 63–64 (1st Cir. 2009) (evidence about prior abuse and stalking of carjacking victim was admissible to show specific intent in carjacking offense); *United States v. Basham*, 561 F.3d 302, 328 (4th Cir. 2009) (threats of violence made during crime spree were admissible to show specific intent to kill or to cause serious harm to victim of carjacking, which occurred during the spree).

Relying on these cases, the government argues that the assault is admissible to prove specific intent because it shows that Clay could develop the intent to cause serious bodily harm to innocent strangers who resist his demands.  Considering both the case law and the purposes of Rule 404(b), this sweeps too broadly and risks eroding the Rule's very purpose.  It perches perilously close to proving specific intent by showing propensity, as it suggests that a person who engages in bad behavior toward another is likely to do so again.  The two offenses at issue—assault and carjacking—are too unrelated and too far apart in time to be probative of whether Clay had the specific intent to do harm to White; they merely show the criminal character of Clay.  *See United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008) (holding that Rule 404(b) evidence is probative of intent only "when the prior [acts] were part of the same scheme or involved a similar modus operandi as the present offense").  While a prior act may be relevant in other circumstances to show specific intent in a carjacking, the assault of Marshall is not admissible for a permissible 404(b) purpose in this case.  The district court erred in admitting the evidence.

### 3. Prejudicial/Probative Balancing

The district court admitted the evidence of the assault for an improper purpose. Our 404(b) analysis does not have to proceed, but in order to firmly establish that error occurred, we continue to the final step.

The third step in the Rule 404(b) analysis requires us to determine whether the unfair prejudicial impact of the evidence substantially outweighs its probative value. Evidence of other bad acts undoubtedly has a powerful impact on a juror's mind.  As we have previously explained, "[w]hen prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered:  to suggest that the defendant is a bad person, a convicted criminal, and that if he "'did it before he probably did it again.'"  *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995).  While a limiting instruction can minimize the prejudicial impact of prior

criminal acts, it is not "a sure-fire panacea for the prejudice resulting from needless admission of such evidence." *Haywood*, 280 F.3d at 724.

This evidence was of slim probative value. In making this evaluation, we consider whether there are alternate sources of proving the same facts. *See Haywood*, 280 F.3d at 723; *see also United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). Here, Means testified about the perpetrator's verbal threats and use of the gun during the carjacking. Thus, the evidence of the assault was not necessary to show that Clay had specific intent.

By contrast, this evidence was extremely prejudicial. The prejudice must be unfair; it must do more than "paint[] the defendant in a bad light." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). In this case, the evidence of the assault is so unrelated to the charged offense that it creates too much of a risk that the jury will generalize from prior examples of bad character. It goes beyond the elements of proof essential to the government's case and may lure the jury into making its determination of guilt or innocence on proof unrelated to the carjacking.

Balancing is highly discretionary, and thus the district court "is afforded great deference." *Bell*, 516 F.3d at 445. Despite this substantial deference, the district court abused its discretion in admitting the evidence of the assault. As explained *supra*, this evidence is not particularly probative of the charged offense. Nor is it necessary to prove that Clay had specific intent to harm White. By contrast, the unfair prejudicial impact of the evidence was high. As empirical studies have shown, evidence of prior bad acts influences factfinders even when the court gives a limiting instruction. *See United States v. Hardy*, 643 F.3d 143, 161 (6th Cir. 2011) (Cole, J., dissenting) (stating that "empirical studies confirm that 'juries treat prior bad acts evidence as highly probative of the charged crime'") (quoting *United States v. Amaya-Manzanares*, 377 F.3d 39, 49 (1st Cir. 2004) (Torruella, J., dissenting)); *see also* Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a)*, 38 Emory L.J. 135, 175–78 (1989). In this case, the differing nature of the crimes

suggested that Clay was a repeatedly violent offender. This created a serious risk that the jury used the evidence for precisely the reasons it was counseled not to: that Clay was a bad person and a threat to society. Thus, the unfair prejudicial impact of the evidence substantially outweighed its slim probative value.

As the evidence of the assault was not admissible for a permissible purpose under Rule 404(b) and its unfair prejudicial impact outweighed its probative value, we find that the district court erred in admitting the evidence.

## C. Prior Act: Uncharged Handgun Theft

Clay argues that the district court erred in admitting evidence of the theft of the handgun from Moser's car. The court admitted the evidence under the *res gestae* exception and under Rule 404(b) to show preparation and identity.

### 1. *Res Gestae*

We have recognized the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is "inextricably intertwined" with the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). While this rule is an exception to Rule 404(b), *see id*. at 748, it does not allow a party to evade 404(b) by introducing any and all other act evidence, *see United States v. Buentello*, No. 08-2199, 2011 WL 1838698, at *4 (6th Cir. May 16, 2011) (noting that "the concerns that prompted Rule 404(b) are very real, and a party may not rely on [the *res gestae*] exception as a backdoor to circumvent its goals"). The principle contains severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense. *Hardy*, 228 F.3d at 749. Examples of general categories that may satisfy these requirements include evidence that "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* at 748.

Here, Clay was charged with carjacking and brandishing a firearm during and in relation to the carjacking. In order to convict on both counts, the government had to

establish that Clay did in fact brandish a firearm. Eyewitness testimony established that the carjacker used a silver semi-automatic handgun during the incident. Another witness, Abernathy, testified that she saw Clay with a semi-automatic handgun either the day of or the day before the carjacking. The government argues that the evidence of the uncharged theft was necessary to complete the story of the offense and explain how Clay obtained the handgun.

This argument is logically flawed. There is no evidence that firmly establishes a relationship between the carjacking and the theft. The gun stolen from Moser's car was never recovered, and nothing confirms that stolen weapon was the gun Abernathy saw with Clay, or the gun used during the carjacking. Without confirmation that the gun is the same, the car theft is neither a prelude to the charged offense, nor probative of it. It does not arise from the same events as the carjacking; in fact, it is a completely separate and distinct offense that is not essential for providing a "coherent and intelligible description of the charged offense." *McCormick on Evidence* § 190 (6th ed. 2006).

The government relies on two cases in which evidence of prior acts involving a gun were admitted pursuant to the *res gestae* exception to show that the defendant had access to a gun in the charged offense. In both of these cases, there was no dispute that the defendant or the weapon were the same. *See United States v. Brown*, 22 F. App'x 102, 103 (4th Cir. 2001) (per curiam) (holding that, in a prosecution for possession of a firearm by a convicted felon, defendant's assault with the firearm the evening before the charged offense was necessary to "complete the story and prove that Brown possessed the gun"); *United States v. Mitchell*, 613 F.2d 779, 782 (10th Cir. 1980) (holding that, in a prosecution for possession of an unregistered firearm, evidence of an armed robbery committed with the firearm was admissible). In other words, there was a confirmed link between the prior act and the charged offense. Here, the gun has never been found and no such link exists. Thus, the trial court abused its discretion in admitting the evidence of the theft under the *res gestae* exception.

## 2. Rule 404(b)

Having determined that the video could not have been admitted under the *res gestae* exception, we now examine whether it was properly admitted under Rule 404(b) for the purposes of showing preparation and identity. As explained *supra*, this analysis requires a three-part test.

### a. Sufficient Evidence That Other Acts Occurred

First, we must determine whether there is "sufficient evidence to support a finding by the jury that the defendant committed" the other act. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). The government argues that this factor does not merit any discussion because there is no dispute that the handgun was stolen from Moser's truck three days before the carjacking. This is not the issue before us; the issue is not whether the theft occurred but whether there is sufficient evidence that Clay committed the act. Clay was never charged with this offense. There are two pieces of evidence that link him to the crime. One, the surveillance video shows that a man in a red and white patterned shirt robbed the cars, and police recovered photos of Clay wearing a similar red and white patterned shirt. Two, items stolen from Archey's car were found in the apartment Clay was located in. These links are tenuous at best, and even more tenuous because the parties dispute whether the evidence from Archey's car is admissible. For the purposes of step one, however, the district court did not clearly err in finding that a jury could reasonably conclude that Clay stole the handgun from the car.

### b. Permissible 404(b) Purpose

Second, we must determine whether the evidence relating to the theft of the handgun was offered for the proper purposes of preparation and identity. Looking to preparation first, we have allowed the admission of other acts evidence to show how the defendant obtained items used in the charged offense. *See United States v. Hembree*, 312 F. App'x 720, 724 (6th Cir. 2008). In *Hembree*, we approved the admission of evidence under 404(b) that the defendant was driving a stolen car when arrested. *Id.* In that case, however, it was clear that the stolen car was the car used during the offense.

Here, the government asked the jury to infer that Clay stole the handgun from Moser's car, and then infer that Clay used that handgun in the carjacking. Even if the jury reaches the first conclusion, there is no evidence that would enable them to reach the second. The fact that both guns were silver is not enough. Guns do not come in a wide variety of colors. This piling of inference upon inference is calling for exactly the kind of propensity determination that Rule 404(b) was intended to prevent. *See Huddleston*, 485 U.S. at 689 (noting that "the Government may [not] parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo"). Thus, the evidence of the theft was not properly admitted as evidence of preparation.

Turning next to identity, Rule 404(b) allows the introduction of other acts evidence to show identity, "provided they are 'of sufficient distinctive similarity' with the charges in the indictment to 'create a pattern or modus operandi.'" *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) (quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006)). The government argues that the evidence relating to the theft of the handgun shows that Clay was responsible for the theft, which in turn shows that he committed the carjacking. This argument contains the same flaw as the argument about preparation: there is no evidence that the handgun stolen from Moser's truck was used in the carjacking. Thus, evidence from the theft of the handgun does not help establish the identity of the carjacker. While the government suggests that the red and white patterned shirt connects both offenses and shows that the same man was responsible, without a substantiated evidentiary link or shared methodology, a mass-produced shirt does not establish a unique identity. In sum, the crimes are not so similar that they establish a pattern or distinctive modus operandi. *See Perry*, 438 F.3d at 648 (affirming admission of other acts evidence that established a distinctive "signature"); *Johnson*, 27 F.3d at 1194 (noting that other acts evidence is admissible if the perpetrator employed "the same *modus operandi* or method of operation"). Accordingly, the evidence of the theft was not properly admitted for evidence of identity.

**c. Prejudicial/Probative Balancing**

The district court erred in admitting evidence of the theft of the handgun for the purposes of establishing preparation and identity.  The Court's 404(b) analysis does not have to proceed, but in order to establish firmly that error occurred, we will continue with the final step.

For the most part, the analysis here mirrors the preceding analysis of the assault.  As with the assault, the evidence of the theft of the handgun was of limited probative value.  Additionally, there was other, less prejudicial, evidence admitted in the trial that Clay had possession of a gun.  Abernathy testified that she saw Clay with a handgun before the carjacking occurred.  If the government's goal was to show that Clay had obtained a handgun before the charged offense, it successfully achieved that goal with Abernathy's testimony.

The prejudicial impact of the evidence was high.  There was a great risk that the evidence suggested that Clay was a repeatedly violent offender.  This risk increased the possibility that the jury used the evidence for precisely the reasons it was counseled not to: that Clay was a bad person and a threat to society.  Thus, the prejudicial impact of the evidence substantially outweighed its slim probative value.

As the evidence of the theft was not admissible pursuant to the *res gestae* doctrine or for a permissible purpose under Rule 404(b) and because its prejudicial impact outweighed its probative value, we find that the district court erred in admitting the evidence of the theft of the handgun.

**D. Harmless Error**

Although the district court erred in admitting the evidence of the assault and the theft of the handgun, the rulings are "'harmless unless it is more probable than not that the error materially affected the verdict.'"  *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (quoting *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998)).  In other words, "[a]n error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was

substantially swayed by the error." *United States v. Murphy*, 241 F.3d 447, 452 (6th Cir. 2001).  Our focus is not "with whether there was sufficient evidence on which [the defendant] could have been convicted without the evidence complained of," but rather the "question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1998) (internal quotations omitted).  In particular, the admission of evidence of prior bad acts is "'harmless error' if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011).

In this case, there is a high probability that the wrongly admitted evidence of the assault and the theft contributed to Clay's conviction.  As explained *supra*, the evidence was of limited probative value, but it layered coincidence upon coincidence to suggest to the jury that Clay was a violent man who posed a threat to the community.  This made it substantially more likely that the jury would convict him, not on the evidence of the charged offense, but on the belief that Clay was a dangerous man.  The limiting instructions were insufficient to mitigate these potential risks.  By instructing the jury to use the evidence of the gun theft as background, preparation, and intent evidence, the district court implicitly approved the idea that the stolen gun was used in the carjacking.  Yet there is absolutely no evidence of this in the record.

While some of the admissible evidence connected Clay to the carjacking, it was far from overwhelming.  Thus the risks that the jury would use inadmissible evidence for an improper purpose were even greater.  *See Bell*, 516 F.3d at 448.  None of the witnesses positively identified Clay as the carjacker, and one witness identified another man as the perpetrator.  While the evidence may connect Clay to the ATM cards and the car itself, none of it actually places him in the parking lot where the offense occurred.  The repeated reference to the mass-produced red and white patterned shirt, without more, does not establish identity.  In sum, we are not persuaded that the errors in this case were harmless.  The impact was substantial, and thus, we find that Clay is entitled to a new trial.

**E. Sufficiency of the Evidence**

We review the district court's denial of defendant's Rule 29 motion for acquittal based on insufficient evidence de novo. *Humphrey*, 279 F.3d at 378. Despite having already identified non-harmless errors necessitating reversal, *supra*, the Sixth Circuit considers insufficiency-of-the-evidence claims "even if a remand is necessary because of trial error." *Patterson v. Haskins*, 470 F.3d 645, 651 (6th Cir. 2006). In this case, sufficient evidence existed to support Clay's convictions for the January 14, 2009, carjacking and brandishing a firearm during that carjacking, when taking that evidence in the light most favorable to the government. *See Hofstatter*, 8 F.3d at 324 ("The government is entitled to the benefit of all reasonable inferences that can be drawn from the evidence.").

To convict Clay of carjacking under under 18 U.S.C. § 2119, the government had to prove that he: "(1) with intent to cause death or serious bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another; (5) by force and violence of intimidation." *Fekete*, 535 F.3d at 476. To convict Clay of brandishing a firearm during and in relation to a crime of violence, the government had to prove that he brandished a firearm during the charged carjacking. 18 U.S.C. § 924(c)(1)(A)(ii).

In weighing the sufficiency of the evidence against Clay, we "'must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 130 S. Ct. 665, 672 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988). This somewhat counter-intuitive standard applies because "[a]n 'appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal.'" *Id.*(citation omitted). To "'make the analogy complete,'" therefore, we must adjudge the sufficiency of the *same* evidence that was before the district court when it denied defendant's motion for acquittal. *Id.* (quoting *Lockhart*, 488 U.S. at 42). Moreover, "because reversal for

insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial." *Id.* (citing *Burks v. United States*, 437 U.S. 1, 18 (1978)).

Including the challenged 404(b) evidence discussed above at length, at trial the government presented evidence that, *inter alia*, Clay attempted to use Ms. White's bank cards one hour after her car was stolen with the cards inside; Ms. White's Grand Prix was later found at Clay's residence; ten days after the carjacking Clay was found in possession of the keys to Ms. White's Grand Prix; compact discs were found inside the Grand Prix with pictures of Clay wearing the same shirt he was wearing when caught on surveillance tape attempting to use Ms. White's bank cards; Ms. Abernathy saw Clay with a semi-automatic handgun around the time of the carjacking; and Ms. Means testified that the carjacker pointed a semi-automatic handgun at both her and Ms. White. Finally, Clay wrote letters from jail asking Ms. Starkey to construct an alibi for him to suggest that another man committed the carjacking.

The central thrust of Clay's argument for acquittal is identity. He argues that the government presented insufficient evidence that *he* was the carjacker. As the district court noted in denying Clay's motion for a new trial, the evidence "particularly with respect to the issue of identification—was circumstantial and that at least some of the Government's evidence—particularly with respect to the testimony of eyewitnesses—was conflicting." There does not seem to be any direct evidence that places Clay in the parking lot where the carjacking occurred. All of the evidence that connects Clay to the offense—the ATM video and cards, the location of the Grand Prix and the keys, the compact disc in the Grand Prix—puts Clay in possession of stolen goods, but does not put him in the lot. Furthermore, Clay did not fit the witnesses' description of the carjacker and none could identify him as the perpetrator.

The lack of direct evidence, however, does not require that the verdict be overturned. *See United States v. Clay*, 346 F.3d 173, 176 (6th Cir. 2003); *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984) ("[C]ircumstantial evidence alone can sustain a guilty verdict and that to do so, circumstantial evidence need *not* remove every reasonable hypothesis except that of guilt."); *United States v. Callan*, 22 F. App'x 434,

449 (6th Cir. 2001) (noting that "the law generally makes no distinction between direct and circumstantial evidence") (unpublished opinion).  Relying on the circumstantial evidence, the jury could have determined that Clay was the man in the parking lot.

In sum, the totality of the evidence presented, both direct and circumstantial, was sufficient to allow a "rational fact-finder" to infer that Clay had stolen Ms. White's Grand Prix, and used a gun to accomplish the theft.  *Jackson*, 443 U.S. at 319.  That is all that is necessary to uphold the sufficiency of the evidence supporting the jury's convictions of Clay for carjacking, and brandishing a firearm during and in relation to a crime of violence. .

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** Appellant's convictions and **REMAND** for a new trial.  In light of this conclusion, we do not consider the two remaining assignments of error.

_____

**DISSENT**

_____

KETHLEDGE, Circuit Judge, dissenting.  Every trial presents its own field of maneuver, with issues rising up in different places on the terrain.  Some issues reach commanding heights, others are just a gentle rise; some have evidence arrayed densely on each side, others have evidence more thin.  Whatever the layout, the district court knows the ground better than we do.  Its understanding comes from the front lines, whereas we are back in a headquarters tent.  And thus we defer a great deal to the district court's judgment as to whether a particular piece of evidence aligns with one issue, or another, or instead does not belong on the field at all.

But here the majority manages Clay's trial from afar.  It reviews *de novo* the question whether, under Rule 404(b), the district court admitted evidence of Clay's prior crimes for proper purposes.  I believe that is an incorrect standard of review.  Although our court has a longstanding intra-circuit conflict regarding the appropriate standard of review for evidentiary decisions under Rule 404(b), the correct standard, I submit, is the deferential one that we apply to every other evidentiary ruling.  *See United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)); *United States v. Allen*, 619 F.3d 518, 524 n.2 (2010) (noting that this circuit has "repudiated the three-tiered standard of review for Rule 404(b) determinations in light of" *Joiner*); *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (rejecting precisely the standard of review that the majority employs today); *Trepel v. Roadway Exp. Inc.*, 194 F.3d 708, 716–17 (6th Cir. 1999) (citing *Joiner*).  Indeed the very reason *why* the Supreme Court granted certiorari in *Joiner* (which is usually thought of as a Rule 702 case) was to set straight the Eleventh Circuit's departure from "traditional 'abuse-of-discretion' review" in reversing the evidentiary decision there.  522 U.S. at 141; *see also id.* at 138–39 ("We granted certiorari in this case to determine what standard an appellate court should apply in reviewing" the evidentiary decision there).  And the Court did so in categorical terms:  "[A]buse of

discretion is the proper standard of review of a district court's evidentiary rulings." *Id.* at 141. We should follow that clear directive here; and I think we are simply wrong to say that we know just as well as the district court whether certain evidence is admissible for a proper purpose in light of all the issues and evidence at trial. I would defer to the district court's decisions here and affirm.

The district court admitted evidence that, three days before the carjacking, Clay broke into a pickup truck in a parking lot and stole a "shiny" stainless steel or brushed nickel semiautomatic handgun. This evidence included security-camera footage showing an African-American man wearing a distinctively patterned red-and-white shirt that matches the shirt Clay is wearing in photos the police later found in his home. The evidence also included a checkbook and DVD player that were stolen from a car in the same parking lot, and that the police likewise found in Clay's home.

The district court admitted this evidence because, when viewed against the backdrop of the other evidence in the case, it helped identify Clay as the person who carjacked Kathryn White three days after the thefts in the parking lot. *See* Fed. R. Evid. 404(b) (providing that evidence of other crimes may be "admissible for . . . identity"). Specifically, an eyewitness to the carjacking testified that the "shiny" stainless steel gun that Clay stole from the pickup truck "look[ed] like" the "silver semi-automatic" gun that the carjacker brandished three days later. (Tr. 112.) And the red-and-white shirt that Clay wore while breaking into the pickup appears identical to the shirt the carjacker is wearing in yet another security-camera photograph—this one from an ATM, about an hour after the carjacking, showing the carjacker trying to use White's credit cards. Hence this evidence was probative of the carjacker's identity. Such was the district court's view of the issues and evidence first-hand.

The majority disagrees, reviewing the issue *de novo*. It says that nothing "confirms" that the shiny handgun in the parking-lot video was the silver one used in the carjacking three days later, and that the red-and-white shirt is "mass produced" and so cannot "establish a unique identity." (Maj. Op. at 13, 16.) But the test for whether this evidence was admissible to prove identity is not whether it confirms that Clay was the

carjacker; rather, the test is merely whether the evidence "tends to make it more probable" that he was. *See United States v. Bonds*, 12 F.3d 540, 572 (6th Cir. 1993) (quotation marks and citation omitted).  Even the majority concedes that the evidence supports the district court's finding that Clay is the person shown stealing the gun on the parking-lot video.  And the improbability that two *different* men—wearing the same distinctive shirt and possessing guns that "look[ed] like" the same one—committed these crimes only three days and two miles apart, does "tend[] to make it more probable" that Clay was the criminal in both.  *Id.*  Thus, the district court did not abuse its discretion in finding evidence of the parking-lot thefts admissible to prove Clay's identity as the carjacker.  And I do not think this evidence was anywhere near inadmissible under Rule 403.

The district court separately admitted testimony that Clay pistol-whipped a teenage girl a year before the carjacking.  On that occasion, Clay was armed with a gun and drove up alongside the girl as she walked to work.  He asked her to get into the car with him.  She declined.  Clay continued to drive alongside her and ordered her to stop.  She did not comply, and instead began to run.  He got out of his car and chased her.  Eventually he caught up to her, grabbed her, and threatened to kill her if she "s[aid] anything."  (Tr. 147.)  Clay then pistol-whipped the girl—striking her jaw—and fled.

The district court admitted this evidence as proof of Clay's intent "to cause death or serious bodily harm" during the carjacking, which is an element of the offense, *see* 18 U.S.C. § 2119, and proof of which is a permissible purpose under Rule 404(b).  Specifically, the court found that the pistol-whipping episode was sufficiently analogous to the carjacking one to support an inference that Clay intended to harm Kathryn White or Ramona Means if White did not comply with his demands.  (The government needed proof on this point because Clay did not in fact physically harm either woman; White complied with his demands.)  In both episodes, Clay was armed with a gun, approached a female stranger, and made a demand.  When the girl did not comply with his demand in the first episode, Clay followed up with serious bodily harm.  Proof of the first

episode thus supported an inference that Clay would have done the same thing had White not complied with his demand in the second.

The majority disagrees, again concluding *de novo* that the two offenses are "too unrelated and too far apart in time" to support that inference. But the path to that conclusion leads through the mire of yet another intra-circuit conflict, in which we are sunk up to the axles here. Specifically, the majority cites *United States v. Bell* for the proposition that evidence of prior crimes is admissible only if the prior crime was "part of the same scheme or involved a similar modus operandi." 516 F.3d 432, 443 (6th Cir. 2008). But *Bell*'s narrow rule for the admissibility of prior-crimes evidence is "inconsistent with prior precedent and is therefore not controlling." *United States v. Hardy*, 643 F.3d 143, 152 (6th Cir. 2011); *see also Jenkins,* 593 F.3d at 485 ("Our precedents are hard to reconcile on this point"). The test for admissibility in this circuit and elsewhere has long been more permissive: whether the defendant's conduct in prior crimes is "sufficiently analogous to support an inference" that the defendant intended to do something similar later. *See United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988). That is functionally the test the district court applied here.

Thus, in *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006), the court upheld the admission of evidence that the police found notes in the defendant's car saying that he planned to "rob cars and kill people" and "rape rob and pillage" as evidence that he intended to cause harm during a carjacking 10 years later. *Id.* at 918, 926; *see also Benton*, 852 F.2d at 1459, 1467–68 (holding that the government could introduce evidence that a sheriff had accepted kickbacks to protect bootleggers to prove that the sheriff later accepted kickbacks for the purpose of protecting a cocaine-distribution scheme). The two offenses in *LeCroy* were no more related than the two offenses in this case. Nor were they closer in time. *See also United States v. Finnell*, 276 F. App'x 450 (6th Cir. 2008) (admitting evidence of 7-year-old crime); *United States v. Love*, 254 F. App'x 511 (6th Cir. 2007) (8 years). The district court did not abuse its discretion by admitting the pistol-whipping evidence as proof of Clay's intent to cause serious bodily harm.

The majority alternatively concludes that this evidence was substantially more prejudicial than probative.  (That makes no less than four evidentiary determinations on which the majority would reverse the district court.)  It reasons that the government had other evidence of Clay's intent: namely, his threat to shoot White and Means.  But to prove "intent to cause death or serious bodily harm[,]" as required by § 2119, it was not enough for the government to prove that Clay made such a threat.  The government had to prove that Clay *was not bluffing* when he made it—that he actually intended to shoot one of those women if White did not hand over her car.  And given the nature of what the government had to prove—beyond a reasonable doubt, no less—the proof was going to be ugly no matter what form it took.  The pistol-whipping evidence was undoubtedly prejudicial, but sometimes prejudice is fair.  It was here.

The district court did not abuse its discretion in this case.  I respectfully dissent.